# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| *In re* MEMORIAL PRODUCTION PARTNERS, L.P., *et al.*, | § § § | |
| Debtors. | § § | |
| BETA OPERATING COMPANY, LLC, | § | CIVIL ACTION H-18-411 |
| Plaintiff, | § | ADVERSARY CASE 17-3365 |
| | § | |
| v. | § | |
| | § | |
| AERA ENERGY, LLC, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a report and recommendation ("R&R") issued by U.S. Bankruptcy Judge Marvin Isgur on February 9, 2018. Dkt. 1. In the R&R, Judge Isgur recommends that the court deny Aera Energy LLC ("Aera"), Noble Energy, Inc. ("Noble"), and SWEPI LP's ("SWEPI") (collectively, the "Previous Owners") motion to withdraw reference of Bankruptcy Adversary Proceeding No. 17-03365. *Id.* The Previous Owners filed an objection to the R&R, plaintiff Beta Operating Company, LLC ("Beta") filed a response to the objection, and the Previous Owners filed a reply. Dkts. 17, 18, 19. After considering the R&R, related documents, the objections, response, and reply, and the applicable law, the court is of the opinion that the R&R should be ADOPTED IN FULL and that the motion to withdraw reference should be DENIED.

## I. BACKGROUND

The Previous Owners had record title to certain petroleum assets (the "Beta Assets") that they leased from the federal government. Dkt. 1.[1] They assigned their interests in the Beta Assets to

---

[1] The background facts in this order are taken from the R&R. The parties did not object to the Bankruptcy Judge's factual findings, and the court finds no error in the factual findings.

Pacific Energy Resources Ltd. ("PERL"), which eventually sold its assets to Rise Energy Beta, LLC ("Rise"). *Id.* Rise is now Beta. *Id.* While PERL assumed, under the purchase and sales agreements ("PSAs"), liability for plugging and abandonment obligations associated with the leases, it was jointly and severally liable for these obligations with the Previous Owners under 30 C.F.R. § 556.604(d). *Id.*; *see* 30 C.F.R. § 556.604(d) ("Every current and prior record title owner is jointly and severally liable, along with record title owners and all prior and current operating rights owners, for compliance with all non-monetary terms and conditions of the lease and all regulations issued under OCSLA, as well as for fulfilling all non-monetary obligations, including decommissioning obligations, which accrue while it holds record title interest."[2]).

PERL provided the federal government with a U.S. Treasury Note in the amount of $90 million to cover its estimated abandonment liability. Dkt. 1. PERL granted the Previous Owners a subordinate security interest in the Treasury Note and placed the Note's proceeds into a trust (the "Beta Trust"). *Id.* The Previous Owners are not parties to the trust agreement. *Id.*

PERL filed bankruptcy and sold the Beta Assets to Rise. *Id.* Subsequent to filing bankruptcy, the trustee, Rise, and the government executed an amendment to the trust agreement that increased the estimated abandonment liability from $90 million to $152 million. *Id.* Rise made the deposits to increase the trust balance. *Id.* In 2016, the government agreed to allow Rise to substitute $62 million in cash with surety bonds, but the trustee required consent from the Previous Owners. *Id.* The Previous Owners refused to consent. *Id.* Beta contends that this refusal was improper under various agreements and section 2.4(a) of the Beta Trust. *Id.* Beta thereafter filed bankruptcy. *Id.*

---

[2] OCSLA is the Outer Continental Shelf Lands Act, which "define[s] the law applicable to the seabed, subsoil, and fixed structures of the [Outer Continental Shelf]." *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996).

In its chapter 11 plan, Beta listed any claims held by the Previous Owners relating to the Beta Trust as Class 3B claims. *Id.* Beta's chapter 11 plan allowed Beta to either substitute some of the cash in the trust with surety bonds, leaving the Previous Owners with a lien on the bonds and any remaining cash, or provide the Previous Owners with "whatever other treatment would render their claims unimpaired." *Id.* The Previous Owners opposed the plan. *Id.*

On April 14, 2017, the Bankruptcy Court confirmed the plan, with the exception of how it treated the Previous Owners' Class 3B claims. *Id.* Beta proposed to substitute all of the trust funds with $62 million in dual-obligee performance bonds and $90 million in U.S. Treasury notes. *Id.* The government confirmed that this plan was compliant with regulations. *Id.* The Previous Owners opposed this plan, and Beta thereafter filed the instant adversary proceeding. *Id.* Beta filed a motion for summary judgment and the Previous Owners filed a motion to dismiss. *Id.* The Bankruptcy Court eventually granted summary judgment in Beta's favor. *Id.* The summary judgment order required the Previous Owners to execute or deliver any instrument required to transfer the funds. *Id.* The order was supplemented and eventually became a final judgment on February 9, 2018. *Id.*

The Previous Owners had requested withdrawal of reference as an alternative in their motion to dismiss. *Id.*; *see* Dkt. 2. The Bankruptcy Judge issued the R&R denying this request on February 9, 2018. Dkt. 1. The withdrawal of reference is the only issue addressed in this order.

## II. LEGAL STANDARD

The Previous Owners moved for withdrawal of reference on mandatory grounds for cause shown. Dkt. 17. Under 28 U.S.C. § 157(a), a district court may refer cases under Title 11 of the Bankruptcy Code to a bankruptcy judge. 28 U.S.C. § 157(a). The court may also refer cases arising under Title 11 or arising in or related to a case under Title 11. *Id.* Under § 157(b), the bankruptcy judge "may hear and determine all cases under title 11 and all core proceedings arising under title

3

11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." *Id.* § 157(b). Under § 157(c), the judge "may hear a proceeding that is not a core proceeding but it otherwise related to a case under title 11," but the judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing do novo those matters to which any party has timely and specifically objected." *Id.* § 157(c).

Under the second sentence of § 157(d), the mandatory withdrawal provision, the "district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* § 157(d). "Courts generally interpret the mandatory withdrawal provision restrictively, granting withdrawal of the reference when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law." *Levine v. M&A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 203 (S.D. Tex. 2008) (Rosenthal, J.). This is to ensure that the mandatory withdrawal requirement "'does not became an "escape hatch" for matters properly before the bankruptcy court.'" *In re Royce Homes LP*, 578 B.R. 748, 756 (Bankr. S.D. Tex. 2017) (Bohm, J.) (quoting *United States v. Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986)). "[C]ourts have generally held that a mandatory withdrawal of reference is warranted where 'substantial and material consideration' of federal statutes other than the Bankruptcy Code is 'necessary' to the resolution of a case or proceeding." *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (citations omitted). To trigger mandatory withdrawal, (1) the proceeding must involve 'a substantial and material question

of both title 11 and non-Bankruptcy Code federal law'; (2) 'the non-Bankruptcy Code federal law [must have] more than a *de minimis* effect on interstate commerce'; and (3) 'the motion for withdrawal [must be] timely filed.'" *Barstad v. CNU of Tex., LLC*, No. SA-17-CV-00581-OLG, 2017 WL 7789541, at *4 (W.D. Tex. Dec. 19, 2017) (quoting *Kingdom Fresh Produce, Inc. v. Delta Produce*, No. 5:14-MC-899-DAE, 2015 WL 869240, at *3 (W.D. Tex. Feb. 27, 2015).

Under the first sentence of § 157(d), the permissive withdrawal provision, the "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." § 157(d).

> Permissive withdrawal for cause shown requires a court to examine the following factors: is the matter core or noncore? Do the proceedings involve a jury demand? Would withdrawal further uniformity in bankruptcy administration? Would withdrawal reduce forum-shopping and confusion? Would withdrawal foster economical use of resources? Would withdrawal expedite the bankruptcy process?

*Levine*, 400 B.R. at 203. The party seeking permissive withdrawal "'bears the burden of establishing grounds for permissive withdrawal.'" *Tow v. Park Lake Communities, LP*, No. H-17-3364, 2018 WL 287861, at *1 (S.D. Tex. Jan. 4, 2018) (Rosenthal, J.) (quoting *In re Morrison*, 409 B.R. 384 (S.D. Tex. 2009)).

Here, the Bankruptcy Judge issued an R&R regarding the Previous Owners's motion to withdraw reference. The Previous Owners timely filed objections.

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy findings of fact or conclusions of law to which specific written objection has been made in accordance with [Federal Rule of Bankruptcy Procedure 9033]. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bankr. P. 9033(d).

## III. ANALYSIS

The Bankruptcy Judge concluded that withdrawal was not mandatory because the "proceeding involves only the interpretation of the Beta Trust Agreement under California law" and consequently "does not involve substantial and material questions under Title 11 and non-bankruptcy federal law." Dkt. 1 at 7–8. It also found no cause had been shown for permissive withdrawal because all of the factors courts consider in determining whether cause exists for permissive withdrawal weigh against permissive withdrawal. *Id.* at 10.

The Previous Owners object to the determination that withdrawal is not mandatory, arguing that the resolution of this matter requires material and substantial consideration of both Title 11 and other federal law. Dkt. 17. The Previous Owners also object to the Bankruptcy Court's findings on permissive withdrawal, arguing, in the alternative, that the dispute is not statutorily core, that it is not within the Bankruptcy Court's Constitutional authority, and that the other factors all favor permissive withdrawal. *Id.*

Beta contends first that the court may not even consider the motion to withdraw reference because it is moot. Dkt. 18. Specifically, it asserts that the Bankruptcy Court has already entered a final order on the merits in the adversary proceeding and, as such, there is nothing left for which reference may be withdrawn. *Id.* Beta also argues that moreover, even if Beta were to demonstrate that reference should have been withdrawn, since the court will review the Bankruptcy Court's summary judgment ruling de novo on appeal, any error with having the matter determined by the Bankruptcy Court in the first instance is harmless. *Id.* Finally, Beta argues that the motion should be denied because the R&R is correct in that neither mandatory nor permissive withdrawal is appropriate. *Id.*

The Previous Owners contend that there is relief that can be granted beyond a mere review of the Bankruptcy Court's order because the Bankruptcy Court could not and did not rule on Beta's threshold claim that sought a declaration that the Beta Trust funds are property of the estate; it asserts that they are not property of the estate and thus the Bankruptcy Court cannot rule on this issue and it, along with the other claims, should be withdrawn and considered by this court. Dkt. 19.

The court will first consider the objection to the Bankruptcy Court's recommendation regarding mandatory withdrawal and then will consider the arguments relating to permissive withdrawal. The court does not address the mootness argument since it has not yet addressed the Bankruptcy Court's ruling on the motion for summary judgment.

## A.    Mandatory Withdrawal

The Bankruptcy Court determined that this proceeding involves only the interpretation of the Beta Trust Agreement under California law. Dkt. 1 at 8 (citing ECF No. 40 at 16–17). It specifically held, in ruling on the motion for summary judgment, that "the Previous Owners may not unilaterally object to any approval [by the government] of a substitution of current Beta Trust funds with the proposed performance bonds." Dkt. 1, Ex. 1 at 17. It based this finding on California contract law. *See id.* at 16–17. The Beta Trust has a governing law provision that requires the agreement to be construed in accordance with California law. Dkt. 17, Ex. 6 ¶ 5.12.

The Previous Owners object to this finding. Dkt. 17. They contend that "bankruptcy issues are, at best secondary, and, in reality, relevant at all only to the extent the dispute itself is first resolved." *Id.* They argue that determining whether the debtor is entitled to access the funds requires an analysis of OCSLA, its implementing regulations, and possibly the state law incorporated under OCSLA. *Id.* It notes that resolving the trust dispute will require "substantial and material consideration" of each of these sources of law and that even the incorporated state law is deemed

7

federal law for these purposes. *Id.* (citing *Romero v. Mobil Expl. & Producing N. Am., Inc.*, 939 F.2d 307, 309 (5th Cir. 1991)). They rely primarily on two cases, *Block v. Anthony Tammaro, Inc.* and *Wooten v. USA, Through Dep't of Interior*, both of which held that withdrawal was mandatory. *Id.* (citing Dkt. 17, Exs. 24, 25). The Previous Owners contend that the Bankruptcy Court, in stating that the trust agreement is governed according to California law, appeared to rely exclusively on section 5.12 of the agreement and ignore the sections of the agreement that indicate the agreement is "'per 30 CFR 256.52'" and is a "'lease specific abandonment account pursuant to [the federal government's] rules and regulations.'" *Id.* (citing Dkt. 17, Ex. 6 (Beta Trust Agreement) at 1–2). The Previous Owners concede that "on its face, those provisions may seem to be in conflict with Section 5.12 . . . but they are not." *Id.* "Instead, [according to the Previous Owners,] the Beta Trust Agreement is governed by OCSLA and its implementing regulations, which in turn borrow from governing state law" but any state law borrowed by OCLSA is "surrogate federal law." *Id.* Moreover, the Previous Owners assert that even if California law were relevant in its own right, the resolution of the Beta Trust dispute requires material and substantial consideration of non-bankruptcy federal law because the trust is an OCSLA decommissioning trust, governed by the Bureau of Ocean Energy Management's ("BOEM") model decommissioning trust agreement, and its *res* is subject to 30 C.F.R. § 556.904 and other regulations. *Id.* The court therefore must materially and substantially consider each of the federal non-bankruptcy law sources to interpret the agreement and whether the proposal to remove trust funds is permitted. *Id.*

Beta asserts that the R&R correctly recognizes that the underlying agreements are governed by California law and the question of whether Beta's chapter 11 Plan impaired the Previous Owners is governed by bankruptcy law. Dkt. 18. Beta notes that the "Previous Owners fail to cite any federal statute or regulation that, even putatively, prohibits the transactions proposed in the Plan,

because no such law exists." *Id.* Beta points out that the Previous Owners do not point to any statute or regulation that precludes Beta from agreeing to the relief ordered by the Bankruptcy Court, and they do not cite any statute or regulation that allows the Previous Owners to veto the government's decision to allow the transaction. *Id.*

The court has reviewed the Bankruptcy Court's memorandum opinion regarding Beta's motion for summary judgment, which it attached as an exhibit to its R&R. *See* Dkt. 1, Ex. B. The Bankruptcy Court noted that the "fundamental issue in this proceeding is whether the substitution of surety bonds for the case within the Beta Trust results in an impairment of the Previous Owners' interests *under the plan*." *Id.* It pointed out that the "evaluation and enforcement of a debtor's plan are within a bankruptcy court's subject matter jurisdiction because such actions concern the administration of a debtor's bankruptcy case and may only arise in the context of that case." *Id.* It held that this case "arises only in the context of bankruptcy and is thus within [the Bankruptcy Court's] subject matter jurisdiction." *Id.* It then turned to whether it had Constitutional authority to issue a final judgment in the proceeding. *Id.* It noted that "the determination of whether the Debtor's chapter 11 plan impairs the Previous Owners' interests and claims constitutes a 'core' bankruptcy proceeding under 28 U.S.C. § 157(b)(2) that stems solely from the bankruptcy itself, particularly the effect and administration of the Debtors' confirmed plan on the Previous Owners' interests." *Id.* It noted that the Beta Trust was governed by California law and then analyzed the trust pursuant to this law. *Id.* It did not rely on OCSLA or, with the exception of mentioning the joint and several liability imposed by 30 C.F.R. § 556.604(d), any federal regulations in reaching decision. *Id.*

The Previous Owners rely on *Wooten* and *Tammaro* to argue that the Bankruptcy Court erred in concluding that it was not materially relying on federal non-bankruptcy law. In *Tammaro*, a U.S.

District Court in New Jersey considered whether to withdraw reference in a case involving a constructive trust created for the unpaid sellers of produce under the Perishable Agricultural Commodities Act ("PACA"), which allows "the Secretary of Agriculture to bring an adversary proceeding to prevent and restrain dissipation of funds subject to the trust." *Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.)*, 56 B.R. 999, 1000 (D.N.J. 1986). The Secretary filed a claim on behalf of nine creditors in the debtor's bankruptcy case and moved for mandatory withdrawal of reference. *Id.* The court held that determining if the PACA trust was part of the bankruptcy estate would "obviously entail material and substantial consideration of both PACA and Title 11 law" and withdrew the reference. *Id.* at 1007.

In *Wooten*, the trustee in a bankruptcy case sought damages from the U.S. Department of the Interior for alleged overcharges in federal royalty crude oil that the debtor had purchased from the government. *Wooten v. USA, Through Dep't of Interior*, 52 B.R. 74, 75 (W.D. La. Bankr. 1985). The trustee asserted that the overcharges were in violation of a federal petroleum pricing regulation. *Id.* The court determined that bankruptcy issues were secondary and that its primary consideration was certain federal statutes, including OCSLA, and regulations. Thus, it withdrew reference under 28 U.S.C. § 157(d) (mandatory withdrawal of reference).

Here, unlike in the cases cited by the Previous Owners, the Bankruptcy Court interpreted an agreement that expressly chose *state* law, and while there may be mention of federal regulations and it may be an OCSLA decommissioning trust, there was no need to substantially rely on any federal law to interpret the contract under California state law. The Bankruptcy Court certainly did not find it necessary to *substantially and materially rely* on non-bankruptcy federal law, and this court likewise will not substantially and materially rely on non-bankruptcy federal law. Accordingly, the Bankruptcy Court's finding on mandatory withdrawal is AFFIRMED.

**B.      Permissive Withdrawal**

The Bankruptcy Court held that this is a core proceeding because it involves the evaluation and enforcement of the debtor's plan as well as the impairment status of the Previous Owners' interests and claims. Dkt. 1. Additionally, it determined that all the other permissive factors either weigh against withdrawal or are neutral. *Id.*

With the exception of the finding that some of the factors are neutral, the Previous Owners' object to the Bankruptcy Court's findings with regard to permissive withdrawal. They contend that the Bankruptcy Court does not have constitutional or statutory authority to finally decide this proceeding and that the court should therefore withdraw reference for cause. Dkt. 17. They assert that the dispute cannot be characterized as relating to the disallowance of claims under 28 U.S.C. § 157(b)(2)(B) because they did not file any claims and are not creditors of the estate.[3] *Id.* They argue that they only participated in the bankruptcy case to reserve their right not to have their interests in the trust improperly adjudicated. *Id.* (citing *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 353 (9th Cir. 1996), for the proposition that the bankruptcy court only has core jurisdiction under § 157(b)(2)(B) if the creditor filed a proof of claim, and *S.G. Phillips Constructors, Inc. v. Burlington, Vt. (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir. 1995), for the proposition that filing a proof of claim triggers § 157(b)(2)(B) subject matter jurisdiction).[4]

---

[3] Under 28 U.S.C. § 157(b)(2)(B), proceedings about "allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11 . . . of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" are core proceedings.

[4] In *In re Conejo Enterprises*, the Ninth Circuit held that a party subjected its claim to the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(B) when it filed a proof of claim.

The Previous Owners additionally contend that this case cannot relate to the "confirmation of the plan" under § 157(b)(2)(L) (which deals with confirmations of plans) because the dispute centers around determining the validity, priority, and extent of the parties' interests in non-estate assets, not in determining plan issues.[5]  *Id.*  In fact, the Previous Owners contend that this adversary proceeding was bifurcated from the plan, which was confirmed and had "already gone effective."  *Id.*  The Previous Owners believe that the Bankruptcy Court relied on the trust funds being property of the estate as a jurisdictional hook, but that the Bankruptcy Court had no authority to issue final orders as the "mere assertion that certain assets are estate property is not sufficient to confer a bankruptcy court with the necessary adjudicatory authority."  *Id.*  Moreover, they argue that if the focal point of an issue is whether a particular item is estate property, the Bankruptcy Court has no final adjudicatory authority.  *Id.* (citing *King v. ARK Woodworks, Inc.*, No. 12-23106 HRT, 2014 WL 2890429, at *3 (Bankr. D. Colo. June 25, 2014)).  They contend that otherwise a debtor's mere assertion that an interest was property of the estate would be like a Trojan Horse allowing debtors to bring garden variety contract claims to the Bankruptcy Court.  *Id.* (citing *Garon v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 852 n.39 (Bankr. S.D.N.Y. 2013)).  The Previous Owners assert that the adversary proceeding here is a non-bankruptcy law contract dispute that predates the bankruptcy filing and has no bearing on the reorganization.  *Id.*

---

*In re Conejo Enters.*, 96 F.3d at 353–54.  *S.G. Phillips* similarly involved core jurisdiction under § 157(b)(2)(B) when a party filed a proof of claim.  *In re S.G. Phillips Constructors, Inc.*, 45 F.3d at 704–05.  But, as the *S.G. Phillips* Court acknowledged, the "Bankruptcy Code provides a *non-exclusive* list of matters that Congress considered to be within the bankruptcy court's core jurisdiction." *Id.* at 704.  Thus, the determinations in these cases that filing a proof of claim resulted in core jurisdiction is only one of many ways, including many ways listed in the statute itself, that a bankruptcy court may have core jurisdiction.

[5]  Under 28 U.S.C. § 157(b)(2)(L), proceedings involving the confirmation of plans are core proceedings.

The Previous Owners further urge that even if the Bankruptcy Court had statutory authority to hear the dispute, it does not have constitutional authority. *Id.* They point out that under Article III of the U.S. Constitution, "only judges with life tenure and salary guarantees can enter final judgments on plenary matters that are 'the subject of a suit at the common law, in equity or admiralty.'" *Id.* (quoting *Burtch v. Huston (In re USDigital, Inc.)*, 461 B.R.276, 286 (Bankr. D. Del 2011)). They note that there is a public rights exception for disputes under Congressionally created schemes, such as bankruptcy, but if a debtor seeks to enforce a right created by non-bankruptcy law that is independent of and antecedent to the reorganization petition, the bankruptcy courts do not have final adjudicatory power. *Id.* The Previous Owners understand that the Bankruptcy Court held that the dispute hinges primarily on a determination of whether the bankruptcy plan impairs the Previous Owners' interests, but they argue that the dispute does not hinge on any rights created by the bankruptcy plan and is independent of and antecedent to the bankruptcy petition. *Id.* They sum it up by stating that the debtor's "attempt to affect interests in property (i.e., the Beta Trust Funds) ***not*** held by [the debtor] at the time of its bankruptcy filing, but instead in the possession of a third party under a claimed interest adverse to the debtor, is not sufficient to confer bankruptcy court adjudicatory authority." *Id.*

With regard to the other factors, the Previous Owners contend that resolution of the dispute would be expedited by withdrawing reference now because the motion for summary judgment was incorrectly decided and if the court refers it back to the Bankruptcy Court to reset the case's procedural posture, it will delay things more. *Id.* They contend that the other factors are not applicable. *Id.*

Beta argues that the adversary proceeding was both statutorily and constitutionally core. Dkt. 18. Beta sought a determination as to whether the proposed treatment of the Previous Owners

in Beta's bankruptcy plan was fair and equitable under the Bankruptcy Code or, alternatively, whether the plan impaired the Previous Owners under the Bankruptcy Code, which are both core bankruptcy claims. *Id.* It also sought a determinations that the property securing the Previous Owners is property of the bankruptcy estate and limiting the Previous Owners' claims, both of which are core bankruptcy questions and could not exist outside of bankruptcy. *Id.* They assert that the fact that the court had to rely on state law did not absolve it of jurisdiction or authority, citing 28 U.S.C. § 157(b)(3). Beta argues, with regard to the Previous Owners' contention that the Bankruptcy Court's jurisdiction was limited because the plan had already been confirmed, that this is incorrect because there is stipulated language in the order confirming the plan that expressly reserved and preserved all the rights, claims, and defenses of Beta and the Previous Owners with regard to their treatment under the plan. *Id.* They also argue that the Previous Owners' contention that the distribution of funds held in the trust is not material to the plan cannot be squared with the plan itself and that the additional cash would provide value to the holders of $1.2 billion in notes that were not paid in full under the plan. *Id.* Additionally, Beta asserts that the "Previous Owners' argument that they are not 'creditors' is absurd." *Id.* Beta claims that the Previous Owners have substantial indemnity claims against Beta and that their interest in the assets of the trust secures those claims. *Id.*

With regard to whether the claims are statutorily core, Beta outlines each of its claims and the provision of the Bankruptcy Code upon which each of the claims rely: (1) declaration that the trust is property of the estate under 11 U.S.C. § 541; (2) declaration that the Previous Owners cannot veto BOEM's direction to the Beta trustee under 11 U.S.C. § 1142(b); (3) declaration that the Previous Owners are unimpaired under 11 U.S.C. § 1124; (4) approval of the plan's treatment of the Previous Owners under 11 U.S.C. § 1129(a)(8)(B) or 11 U.S.C. § 1129(b)(1) & (2)(A);

(5) disallowance of contingent claim under 11 U.S.C. § 502 (e); and (6) limitation of post-petition lien under 11 U.S.C. § 552(a). *Id.*

With regard to constitutional authority, Beta points out that the U.S. Supreme Court has held that while Article III prevents bankruptcy courts from entering final judgment on claims that seek to only augment the bankruptcy estate and would have existed even without the bankruptcy proceeding, it specifically stated that the holding was narrow and not meant to change the division of labor in bankruptcy cases. *Id.* (citing *Stern v. Marshall*, 564 U.S. 462 (2011)). It then distinguishes *Stern* and points out that in this case, the adversary proceeding completed the plan confirmation proceedings and sought a determination of whether the plan's treatment of the Previous Owners was fair and equitable under the Bankruptcy Code. *Id.*

Beta also argues that the other permissive withdrawal factors are not satisfied. *Id.* They assert that there has been no jury demand, a withdrawal would undermine uniformity in bankruptcy administration and encourage forum shopping, sever a key aspect of plan confirmation from the Bankruptcy Court's administration, and provide a back door to litigants who seek to undermine a Bankruptcy court's *Stern* authority. *Id.* Additionally Beta points out that the court would have to learn the plan that the Bankruptcy Court confirmed, address issues of bankruptcy law, and invalidate a final order. *Id.* It points out that the Previous Owners filed eight substantive briefs in the Bankruptcy Court and that the Bankruptcy Court held multiple hearings relating to these briefs. *Id.*

Finally, Beta asserts that the Previous Owners and Beta stipulated to postpone the adjudication of the plan's treatment of the Previous Owners' claims, and the agreement was without prejudice to any parties' rights with regard to confirmation. *Id.*

In reply, the Previous Owners assert that the Beta Trust dispute has nothing to do with Beta's already-confirmed plan as the Previous Owners are not creditors and have not consented to the

Bankruptcy Court's jurisdiction or filed proofs of claim. Dkt. 19. They assert that the dispute is an antecedent and independent dispute over non-debtor property held outside of Beta's estate in a federal-law governed decommissioning trust. *Id.* With regard to Beta's argument about *Stern*, the Previous Owners contend there is substantial pre-*Stern* caselaw that supports their position, such as *Marathon*, *Cline*, *Harrison*, *Weidhorn*, and *Taubel-Scott*. *Id.* The Previous Owners contend that Beta's *Stern* analysis is incorrect, but regardless, this other caselaw mandates Article III adjudication. *Id.* Specifically, they contend it supports the position that "when a debtor seeks to enforce a right created by non-bankruptcy law that is '***independent of*** and ***antecedent to*** the reorganization petition,' bankruptcy courts do not have final adjudicatory power." *Id.* (citing *Marathon*, 458 U.S. at 71). It contends that it has the right to have the merits of its claim adjudicated by an Article III court and that the Bankruptcy Court cannot retain jurisdiction absent its consent. *Id.* (citing *Cline*, 323 U.S. at 98–99). It points out that Beta does not have control over the Beta Trust Funds, which are held by a third-party trustee who has refused Beta's demands to release the property. *Id.* (citing *In re Am. S. Pub. Co.*, 426 F.2d 160 (5th Cir. 1970)). It asserts that absent a threshold determination that the Beta Trust Funds are property of the estate, the Bankruptcy Court cannot issue binding orders. *Id.* (asserting that the funds are not property of the estate here because Beta has only a contingent, reversionary interest in the funds).

In *Stern*, the U.S. Supreme Court considered a case in which a Bankruptcy Court granted summary judgment on a tortious interference with contract claim and the losing party argued that the court did not have the power to enter a final judgment because the counterclaim was not a "core" proceeding. *Stern v. Marshall*, 564 U.S. 462, 470–71, 131 S. Ct. 2594 (2011). The Court held that the Bankruptcy Court had the statutory power to enter the judgment, but not the constitutional authority. *Id.* at 469. It noted that bankruptcy courts may hear and enter final judgments in core

proceedings but must submit proposed findings of fact and conclusions of law to the district court in non-core proceedings. *Id.* at 471. The counterclaim was "core" under the plain text of the relevant statute, 28 U.S.C. § 157(b)(2)(C). *Id.* at 475. However, the Court determined that "designating all counterclaims as 'core' proceedings raises serious constitutional concerns." *Id.* at 477. It noted that "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' . . . and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 484 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90, 102 S. Ct. 2858 (Rehnquist, J., concurring in the judgment)).

The *Stern* Court first discussed its holding in *Marathon* that assigning state-law contract claims to bankruptcy judges violated Article III of the United States Constitution. *Id.* at 485 (discussing *Marathon*, 458 U.S. at 52, 87, 91). It pointed out that Congress revised the statute governing bankruptcy jurisdiction after the *Marathon* decision, and the new statute called for bankruptcy judges to be appointed by the courts of appeals in their districts and to enter final judgments in only core proceedings. *Id.* at 486 (discussing 28 U.S.C. § 152(a)). The bankruptcy courts' final judgments in core proceedings are binding and enforceable and district courts review them "only under the usual limited appellate standards." *Id.* at 487. The *Stern* Court noted that the counterclaim in that case was a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy" and was thus not "a matter of 'public right' that can be decided outside of the Judicial Branch." *Id.* at 487–88. It did not flow from Congress or from a federal statutory scheme. *Id.* at 493. The Court pointed out all of the rulings above and beyond the rulings on the proof of claim that would be necessary to adjudicate the counterclaim and that the claim was "in no way derived from or dependent upon

bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding." *Id.* at 499. It ruled that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process" or falls within the public rights exception. *Id.* The court cautioned that its holding was narrow and that it did not think the removal of counterclaims from core bankruptcy jurisdiction "meaningfully changes the division of labor in the current statute" as bankruptcy courts could still decide issues that were related to the bankruptcy proceedings; the district court just had to "'finally decide'" them. *Id.* at 502.

The Bankruptcy Court outlined the "fundamental issue in this proceeding" as being "whether the substitution of surety bonds for the cash within the Beta Trust results in an impairment of the Previous Owners' interest *under the plan*"—"an issue . . . explicitly reserved at the confirmation . . . that was integral to the confirmation decision." Dkt. 1, Ex. B at 12 (Bankrtupcy Court's order on the motion for summary judgment). It determined that the case was within its subject matter jurisdiction because it involved "the administration of the Debtors' chapter 11 plan, as well as the impairment status of the Previous' Owners' interests and claims by that plan" and thus arose "only in the context of bankruptcy." *Id.* With regard to Constitutional authority, the court held that the proceeding stems solely from the bankruptcy itself, and particularly the effect and administration of the Debtors' confirmed plan on the Previous Owners' interests. *Id.*

The court agrees with the Bankruptcy Court that this matter is a core issue and that the Bankruptcy Court's exercise of jurisdiction was Constitutional. Under *Stern*, the court must determine whether the action stems from the bankruptcy itself, and each of the claims at issue stem from the bankruptcy or the impact of the plan on the Previous Owners' interests and thus arose only

18

in the context of bankruptcy. The fact that the Previous Owners did not actually file a proof of claim is of little consequence since the claims concern the administration of the bankruptcy case—whether the plan impaired the Previous Owners' interests—and could only arise in the context of bankruptcy.[6] *See* Dkt. 40, Ex. B at 13.

The other permissive withdrawal factors also weigh in favor of not withdrawing reference. There is no jury demand. The case will be finalized more quickly if the Bankruptcy Court, which is already familiar with the issues, decides it. And the costs would be increased if reference were withdrawn since the Bankruptcy Court has already considered all issues and ruled on them.

The court agrees with the Bankruptcy Court that reference should not be withdrawn. The motion to withdraw reference is DENIED.

## IV. CONCLUSION

The Previous Owners' objections to the Bankruptcy Court's R&R are OVERRULED. The Bankruptcy Court's R&R is ADOPTED IN FULL.[7] The motion to withdraw reference is DENIED.

Signed at Houston, Texas on September 20, 2018.

_____
Gray H. Miller
United States District Judge

---

[6] While the Previous Owners did not file a "proof of claim," they concede that they participated in the proceedings "to reserve their right not to have their interests in the Beta Trust and the Beta Trust Funds improperly adjudicated by a bankruptcy court." Dkt. 17 at 16.

[7] The court notes that the R&R incorporates its attachments for background information, including a January 19, 2018 order on a motion for partial summary judgment (the "January 19 PSJ Order"). This court's adoption of the R&R includes the attachments only to the extent they provide additional background information on the case. The Previous Owners have appealed the Bankruptcy Court's February 9, 2018 order, which also incorporated the January 19 PSJ Order, and the court will address the appeal of the February 9 order and any legal issues it relies on from the January 19 PSJ Order at a later date.